1

**Todd M. Friedman (216752)**
**Adrian R. Bacon (280332)**
**Law Offices of Todd M. Friedman, P.C.**
**21550 Oxnard St., #780**
**Woodland Hills, CA 91367**
**Phone: 877-206-4741**
**Fax: 866-633-0228**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**
**Attorneys for Plaintiff**

2

3

4

5

6

7

*Attorneys for Plaintiff, Dan DeForest and Andrew DeForest, and all others similarly situated*

8

9

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| Dan DeForest and Andrew DeForest, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Pepper Tree, Inc. dba WildWater Express Carwash, a California Corporation; and Does 1-10, inclusive,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br>(3) Violation of Electronic Funds Transfer Act (15 U.S.C. §1639 *et seq.*)<br><br>**Jury Trial Demanded** |

Plaintiff Dan DeForest and Andrew DeForest ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action Complaint against Defendant Pepper Tree, Inc. dba WildWater Express Carwash (hereinafter "Defendant") to stop Defendant's practice of falsely advertising it will not begin a recurring monthly charge for a car wash service plan, after consumers reject the offer, and purchase a single car wash service from Defendant using their debit card, and to obtain redress for all California consumers ("Class Members") who were subjected, within the applicable statute of limitations period, to recurring charges for the monthly car wash plan by Defendant, when seeking to only purchase a single car wash service (hereinafter collectively referred to as the "Class Products")

2.     Plaintiff also brings this action on behalf of all nationwide consumers whose bank accounts were subjected to a recurring debit of their bank accounts, debit cards, or credit cards to pay for Defendant's monthly services, but who did not provide written authorization to Defendant to enter into such an EFT arrangement, nor received a copy of the terms upon which they were subject to an autopay arrangement with Defendant after having been entered into such an arrangement.

3.     Defendant is a California corporation and is engaged in providing car wash services to consumers in the counties of Los Angeles and Orange.

4.     Defendant represents to consumers, while paying for a single car wash, the option of purchasing a monthly car wash plan by adding a recurring charge to their bank account, debit card, or credit card. But, Defendant, regardless of whether the consumer signs up for the monthly car wash plan, begins to automatically charge money from the consumer's bank account, debit card, or credit card, when the consumer uses their debit or credit card to pay for the single

car wash.

5.     Plaintiff and others similarly situated did not purchase the Class Products.

6.     Defendant misrepresented and falsely advertised to Plaintiff and others similarly situated that it would not initiate a recurring charge on their bank account, debit card, or credit card, but in fact began to withdraw funds from Plaintiff's, and others similarly situated, after rejecting Defendant's offer to purchase the Class Product.

7.     Defendant's misrepresentations to Plaintiff and others similarly situated caused them to use their debit or credit cards to purchase a single car wash, after Defendant assured them they would not add a recurring charge to their bank account, debit card, or credit card, which Plaintiffs and other similar situation would not have purchased absent these misrepresentations by Defendant and its agents. In so doing, Defendant has violated California consumer protection statutes.

8.     Additionally, Plaintiff's Class Action Complaint is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA").

9.     Plaintiff, individually, and on behalf of all others similarly situated, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants debiting Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b). Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including

1    investigation conducted by her attorneys.

2    **NATURE OF THE CASE & COMMON ALLEGATIONS OF FACT**

3    10.    Plaintiff brings this matter on behalf of all consumers whom
4    Defendant began to automatically withdraw money from their bank accounts, or
5    charge their credit cards, for services they didn't want.

6    11.    Consumers use their debit cards or credit cards to purchase the Class
7    Product, advertised by Defendant, to obtain a single car wash.

8    12.    Defendant represents to the consumer, after purchasing the Class
9    Product, they will not add a recurring charge to their bank account, debit card, or
10   credit card, for a monthly car wash plan, after using their debit card or credit card
11   to purchase a single car wash.

12   13.    To reinforce this representation, Defendant's agents are trained,
13   through standard company-wide policies and practices, to inform consumers that
14   they will not see a recurring charge on their financial statements, after purchasing
15   the Class Product.

16   14.    Consumers rely on the common representations and advertisements
17   of Defendant's agents, made both through trained standardized pitches, in order to
18   determine whether to purchase the Class product. The average consumer usually
19   believes someone will not charge them for a service they gave their express
20   consent not to participate in.

21   15.    Defendant is engaged in the marketing and fulfilling of the Class
22   Product as advertised to the consumer.

23   16.    Defendant profits from the sale of the Class Product to consumers.
24   Without the promise of not establishing a recurring charge on the consumers' bank
25   account, debit card, or credit card; many consumers would not purchase the Class
26   Product because of the lack of necessity and want for signing up for a monthly car
27   wash service, and the knowledge that payment for one purchase would

28

automatically begin a service consumers do not need or want.

17.    In actual fact, the Class Product does initiate a recurring charge on the consumer's bank account, debit card, or credit card, without Plaintiff's, or other similarly situated, express consent.

18.    Defendant trains its agents to use standardized sales pitches to consumers during interactions with consumers, while paying for the single car wash service. Such representations contain false statements relating to the guarantee Defendant would not charge consumers, on a recurring basis, their bank account, debit card, or credit card, for a monthly car wash service, after choosing to pay with either debit card or credit card for a single car wash.

19.    Despite the fact that the Class Products do start a recurring charge on consumers' bank account, debit card, or credit card, Defendant and its agents represent to consumers, through interactions with its agents, that the Class Products will not initiate recurring charges on their financial resources.

20.    Defendant conceals the fact that the Class Products do set up a recurring charge on consumers' bank account, credit card, or debit card and cause consumers to pay for a service they elected not to.

21.    Defendant electronically deducts money from the consumers' bank account, credit card, or debit card to pay for monthly fees relating to the Class Product, without first obtaining proper written authorization of the consumer. Rather, Defendant's common policy and practice is to obtain payment information, through charging consumers' credit or debit cards for a single car wash, and thereafter, to fail to provide consumers with a written copy of the electronic funds transfers authorization.

22.    The aforementioned oral representations are objectively false, and constitute a false advertisement under Cal. Bus. & Prof. Code §§ 17500 et. seq., an unlawful, unfair, or deceptive business practices under Cal. Bus. & Prof. Code

§§ 17200 et. seq..

23.    Defendant's conduct also constitutes a violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA").

**JURISDICTION AND VENUE**

24.    This Court has jurisdiction under 28 U.S.C. 1331, because this action is brought pursuant to the EFTA, 15 U.S.C. 1693 *et seq.* There is original federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), by virtue of 28 U.S.C. §1332(d)(2), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

25.    In the case at bar, there are at least 100 members in the proposed Class and Sub-classes, the total claims of the proposed Class members are in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiffs and the sub-class are citizens of California State.

26.    Venue and personal jurisdiction in this District are proper pursuant to 28 U.S.C. 1391(b) because Plaintiff resides within this District and Defendants do or transact business within this District, and a material portion of the events at issue occurred in this District.

**THE PARTIES**

27.    Plaintiff Dan DeForest is a citizen and resident of the State of California, County of Orange.

28.    Defendant Pepper Tree, Inc. dba WildWater Express Carwash is a California corporation with its principal place of business located in California. Defendant conducts a large share of its business within California.

29.    The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

30.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, Defendant and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of any and all of Defendant's employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of Defendant.

31.    Plaintiff is informed and believes, and thereon alleges, that said Defendant is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all its employees, agents, and/or third parties acting on its behalf, in proximately causing the damages herein alleged.

32.    At all relevant times, Defendant ratified each and every act or omission complained of herein.  At all relevant times, Defendant, aided and abetted the acts and omissions as alleged herein.

## PLAINTIFF'S FACTS

*General Background, False Advertising and Unfair /Deceptive Trade Practices*

33.    In, or around, February 2017, Plaintiff arrived at Defendant's Costa Mesa, California location to have his car washed. After submitting his vehicle for

the service, Plaintiff went to pay for the single car wash service.

34.     When Plaintiff approached to pay for the single car wash service, Defendant's agent advertised to Plaintiff a monthly car wash service plan.

35.     Plaintiff expressed stated he did not want to sign up for this service, and did not consent to allowing Defendant to initiate any recurring charges on his bank account, debit card, or credit card.

36.     Plaintiff completed the transaction for the single car wash by allowing Defendant to debit funds, one time, from his bank account, for the service of a single car wash.

37.     Plaintiff is informed and believes, and thereon alleges, that Defendant initiated a recurring charge on Plaintiff's bank account when Plaintiff handed to Defendant's agent his debit card to purchase a single car wash service from Defendant.

*Factual Background Regarding Defendant's Violations Of The EFTA*

38.     In or around March 2017, Plaintiff saw a charge of $29, from Defendant, for the Class product.

39.     Plaintiff did not give consent to Defendant to establish such charges on his bank account.

40.     Defendant gathered Plaintiff's bank card payment information via scanning the bank card information to the computer, in order to set up autopay, but did not make Plaintiff fill out a proper EFTA disclosure form.

41.     Plaintiff never provided Defendant with written authorization to deduct any sums of money on a regular recurring basis from Plaintiff's banking account.

42.     Further, Defendants did not provide to Plaintiff, nor did Plaintiff execute, any written or electronic writing memorializing or authorizing the recurring or automatic payments.

43.     Plaintiff did not provide Defendants either with a written or an electronic signature authorizing the recurring or automatic payments.

44.     Moreover, after Plaintiff attempted to cancel services with Defendant, Defendant continued to withdraw funds on a monthly basis from Plaintiff's bank account, without authorization, to pay for its services.

45.     Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made.

46.     Defendant never provided Plaintiff with a copy of any authorization, nor a copy of any contract binding Plaintiff to a payment arrangement.  In fact, Plaintiff repeatedly requested such a copy, including in writing, and was never provided one.

47.     Plaintiff alleges such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action, on behalf of herself and all others similarly situated, and thus, seeks class certification under Federal Rule of Civil Procedure 23.  Plaintiff brings this action on behalf of Two Classes.

### *THE EFTA CLASS*

49.     Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (hereafter "The EFTA Class") defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this

Complaint.

50.    Plaintiff represents, and is a member of, The EFTA Class, consisting of all persons within the United States whose bank account was debited on a recurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.  Such Individuals also were not provided a copy of any such authorization by Defendant.

51.    Defendant, its employees and agents are excluded from The EFTA EFTA Class.  Plaintiffs do not know the number of members in The EFTA Class, but believe the EFTA Class members number in the hundreds, if not more.  Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

52.    The EFTA Class is so numerous that the individual joinder of all of its members is impractical.  While the exact number and identities of The EFTA Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that The EFTA Class includes hundreds, if not thousands, of members. Plaintiff alleges that The EFTA Class members may be ascertained by the records maintained by Defendant.

53.    This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the EFTA Class is so numerous that joinder of the EFTA Class members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.

54.    There are questions of law and fact common to the EFTA Class affecting the parties to be represented.  The questions of law and fact to the EFTA Class predominate over questions which may affect individual EFTA Class members and include, but are not necessarily limited to, the following:

a.    The Members of the EFTA Class did not enter into agreement with

Defendant to have an automatic, or recurring, electronic payments drawn from their personal accounts to pay for Defendant's Class Products.

b.    The members of the EFTA Class were not provided with, nor did they execute, written agreements memorializing the automatic or recurring electronic payments.

c.    Defendant did not request, nor did it provide, EFTA Class members with written agreements memorializing the automatic or recurring electronic payments.

d.    The members of the EFTA Class did not provide either a written ("wet") or otherwise electronic signature authorizing the automatic or recurring electronic payments.

e.    Despite not providing written or electronic authorization for payments to be drawn from their accounts, Defendant took unauthorized payments from EFTA Class members' accounts.

55.    As someone whose bank account was debited on a reoccurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, and who did not receive a copy of any such agreement, Plaintiff is asserting claims that are typical of The EFTA Class.

56.    Plaintiff will fairly and adequately protect the interests of the members of The EFTA Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

57.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all EFTA Class members is impracticable.  Even if every EFTA Class member could afford individual litigation, the court system could not.  It would be unduly

burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each EFTA Class member.

58. The prosecution of separate actions by individual EFTA Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other EFTA Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party EFTA Class members to protect their interests.

59. Defendant has acted or refused to act in respects generally applicable to The EFTA Class, thereby making appropriate final and injunctive relief with regard to the members of the EFTA Class as a whole.

60. Defendant failed to comply with the writing and notice requirements of § 907(a) of the EFTA, 15 U.S.C. § 1693e(a) as to the EFTA Class members with respect to the above alleged transactions.

61. Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

62. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

63. Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p ]reauthorized electronic fund transfers from a consumer's account may be

authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

64.     Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

65.     In multiple instances, Defendant debited bank accounts of the EFTA Class members on a recurring basis without obtaining a written authorization signed or similarly authenticated by the respective EFTA Class members for preauthorized electronic fund transfers from the accounts of the respective EFTA Class members, thereby violating § 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

66.     In multiple instances, Defendant debited EFTA Class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by the respective EFTA Class members for preauthorized electronic funds transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

67.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable because, on information and belief, the putative class consists of hundreds, if not thousands, of individuals and is so numerous that joinder of all putative class members, whether otherwise required or permitted, is impracticable. The actual number of putative class members is in the exclusive control of Defendant.

68.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable, because Plaintiff will fairly and adequately protect the interests of the EFTA Class and Plaintiff has hired counsel able and experienced in class action litigation.

69.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because this Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive individual basis.

70.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because the size of each putative class member's actual damages is too small to make individual litigation an economically viable option.

71.     Pursuant to Fed. R. Civ. P. 23(b)(3), class certification is appropriate because no unusual difficulties will likely occur in the management of the EFTA Class as all questions of law or fact to be litigated at the liability stage are common to the putative class and all compensatory relief is concomitant with a liability finding and can be calculated by automated and objective means.

72.     The size and definition of the EFTA Class can be identified through Defendant's records and/or Defendant's agents' records.

### THE FALSE ADVERTISING AND UCL CLASS

73.     The class Plaintiff seeks to represent (the "FAL Class") is defined as follows:

> All California Citizens who, between the applicable statute of limitations and the present, purchased the Class Products in the State of California, within four years of the filing of this Complaint.

74.     As used herein, the term "FAL Class Members" shall mean and refer to the members of the FAL Class described above.

75.     Excluded from the FAL Class are Defendant, its affiliates, employees, agents, and attorneys, and the Court.

76.     Plaintiff reserves the right to amend the FAL Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

77.     Upon information and belief, the proposed FAL Class is composed of thousands of persons.  The members of the FAL Class are so numerous that joinder of all members would be unfeasible and impractical.

78.     No violations alleged in this complaint are contingent on any individualized interaction of any kind between FAL Class members and Defendant.

79.     Rather, all claims in this matter arise from the identical, false, affirmative oral statements that Defendant would not establish a recurring monthly charge on the FAL Class Members' bank accounts, after refusing to purchase the monthly car wash service plan and paying for their single car wash service with a debit or credit card.

80.     There are common questions of law and fact as to the FAL Class Members that predominate over questions affecting only individual members, including but not limited to:

(a)     Whether Defendant engaged in unlawful, unfair, or deceptive business practices in selling Class Products to Plaintiff and other FAL Class Members;

(b)     Whether Defendant made misrepresentations with respect to the Class Products sold to consumers;

(c)     Whether Defendant profited from the sale of the Class Products;

(d)     Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*., California Bus. & Prof. Code § 17500, *et seq*., and California Civ. Code § 1750, *et seq*.;

CLASS ACTION COMPLAINT

(e)   Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

(f)   Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

(g)   The method of calculation and extent of damages for Plaintiff and Class Members.

81.   Plaintiff is a member of the FAL Class she seeks to represent

82.   The claims of Plaintiff are not only typical of all FAL Class members, they are identical.

83.   All claims of Plaintiff and the FAL Class are based on the exact same legal theories.

84.   Plaintiff has no interest antagonistic to, or in conflict with, the FAL Class.

85.   Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff bought Class Products from Defendant during the Class Period.   Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experiences.   Plaintiff's claims are typical of all Class Members as demonstrated herein.

86.   Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class.

87.   Common questions will predominate, and there will be no unusual manageability issues.

CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## Violation of the California False Advertising Act

### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

88.     Plaintiff incorporates by reference each allegation set forth above.

89.     Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

90.     California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

91.     Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant will not begin a recurring charge on the Class Members's bank accounts, when they use a debit or credit card to pay for a single car wash service, and that Defendant will not establish a recurring charge on the Class Members's bank accounts, when they use a debit or credit card to pay for a single car wash service, after expressly rejecting to purchase the Class Product; Defendant, made false representations and material omissions to Plaintiff and other putative class members in order to solicit these transactions

92.     Specifically, Defendant promised through standardized sales pitches, provided by its agents, that it will not begin a recurring monthly charge for a monthly car wash service, when Plaintiff sought to use his debit card to pay for a single car wash service and rejected Defendant's offer to purchase this service.

Defendant also made representations in this same manner to Class Members regarding the establishment of a recurring monthly charge on their bank accounts after rejecting the offer to purchase the service and giving their debit or credit card for payment of a single car wash service.

93.    Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

94.    As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.   Plaintiff reasonably relied upon Defendant's representations regarding the Class Products as described herein.   In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the Class Products.   Plaintiff and other Class Members noticed a recurring monthly charge the following month, after receiving and paying for a single car wash and rejecting the offer to sign up for the monthly service. Therefore Plaintiff and other Class Members have suffered injury in fact.  Plaintiff and Class Members are now stuck with monthly recurring charges, on their bank statements, that they never agreed to, when they initially declined to purchase this service from Defendant.

95.    Plaintiff alleges that these false and misleading oral representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

96.    Defendant advertised to Plaintiff and other putative class members, through oral representations and omissions made by Defendant and its employees.

97.    Defendant knew that its agents did begin a monthly recurring charge

on the Class Members' bank accounts after advertising they would not, when Class Members paid for a single car wash service with their debit cards or credit cards and decline to purchase the monthly car wash service.

98.    Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that did not perform as advertised by the Defendant.

99.    The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Moreover, Class Members are currently stuck losing money from their bank accounts for a service they did not wish to purchase. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.   Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**

**Violation of Unfair Business Practices Act**

**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

100.    Plaintiff incorporates by reference each allegation set forth above.

101.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.   A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct

1    created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory

2    definition of unfair competition covers any single act of misconduct, as well as

3    ongoing misconduct.

### UNFAIR

4

5    102.  California Business & Professions Code § 17200 prohibits any

6    "unfair ... business act or practice."  Defendant's acts, omissions,

7    misrepresentations, and practices as alleged herein also constitute "unfair"

8    business acts and practices within the meaning of the UCL in that its conduct is

9    substantially injurious to consumers, offends public policy, and is immoral,

10   unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs

11   any alleged benefits attributable to such conduct.  There were reasonably available

12   alternatives to further Defendant's legitimate business interests, other than the

13   conduct described herein.  Plaintiff reserves the right to allege further conduct

14   which constitutes other unfair business acts or practices.  Such conduct is ongoing

15   and continues to this date.

16   103.  In order to satisfy the "unfair" prong of the UCL, a consumer must

17   show that the injury: (1) is substantial; (2) is not outweighed by any countervailing

18   benefits to consumers or competition; and, (3) is not one that consumers

19   themselves could reasonably have avoided.

20   104.  Here, Defendant's conduct has caused and continues to cause

21   substantial injury to Plaintiff and members of the Class.  Plaintiff and members of

22   the Class have suffered injury in fact due to Defendant's decision to establish a

23   recurring monthly charge on their bank accounts after Plaintiff and Class Members

24   refused to sign up for a monthly car wash service.  Thus, Defendant's conduct has

25   caused substantial injury to Plaintiff and the members of the Sub-Class.

26   105.  Moreover, Defendant's conduct as alleged herein solely benefits

27   Defendant while providing no benefit of any kind to any consumer.   Such

28

deception utilized by Defendant convinced Plaintiff and members of the Class to use their debit card or credit card to purchase services from Defendant, without hesitating that Defendant will begin a monthly charge on their bank accounts. In fact, knowing that Class Products, will establish a recurring monthly charge on Plaintiff and Class Members' bank accounts for services they did not purchase, Defendant unfairly profited from their sale, since it knew that the expected benefit that Plaintiff would receive from the Class Product is nonexistent, when this is typically never the case in situations involving the payment for services rendered. Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers

106.   Finally, the injury suffered by Plaintiff and members of the Sub-Class is not an injury that these consumers could reasonably have avoided.   After Defendant, falsely represented that Class Products would not establish a monthly recurring charge onto Plaintiffs' and Class Members' bank accounts, these consumers suffered injury in fact due to Defendant's sale of Class Products to them.   Defendant failed to take reasonable steps to inform Plaintiff and Class Members that the Class Products would begin charging monthly for a service they did not purchase, as advertised by Defendant and its agents, including deceiving Plaintiff and Class Members that it will not establish a recurring charge, after Plaintiff and Class Members decline to sign up for the service.   As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase a monthly car wash service. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

107.   Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

108. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

109. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

110. Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidence by the fact that Plaintiff chose to use his debit card to purchase a single car wash, under the basic assumption that Defendant would not charge him monthly for a service, he declined to purchase, but saw a recurring charge on his bank statement the following month from Defendant. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public

111. As explained above, Defendant deceived Plaintiff and other Class Members by representing they will not establish a monthly recurring charge on their bank accounts for a service they declined to purchase.

112. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

### UNLAWFUL

113. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

114. As explained above, Defendant deceived Plaintiff and other Class

Members by representing the Class Products will not establish a monthly recurring charge on their bank statement for a  car wash service.

115.   Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.   Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. Class Members are now stuck with a monthly recurring charge on their bank accounts, and paying for a service they declined to purchase.

116.   These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

117.   Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.   Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**THIRD CAUSE OF ACTION**

**Violation of Electronic Funds Transfer Act**

**(15 U.S.C. §1693 *et seq*.)**

118.   Plaintiff reincorporates by reference all of the preceding paragraphs.

119.   Section 907(a) of the EFTA, 15 U.S.C. §1693(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be

authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

120.   Section 903(9) of the EFTA, 15 U.S.C. § 1693(a)(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

121.   Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p ]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

122.   Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5.  The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

123.   In multiple instances, Defendants have debited Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

124.   In multiple instances, Defendants have debited Plaintiff's and also the putative Class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or the putative Class members for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693(a), and Section 205.10(b)

1    of Regulation E, 12 C.F.R. § 205.l0(b).

2                              **MISCELLANEOUS**

3        125.   Plaintiff and Class Members allege that they have fully complied with

4    all contractual and other legal obligations and fully complied with all conditions

5    precedent to bringing this action or all such obligations or conditions are excused.

6                          **REQUEST FOR JURY TRIAL**

7        126.   Plaintiff requests a trial by jury as to all claims so triable.

8                          **PRAYER FOR RELIEF**

9        127.   Plaintiff, on behalf of herself and the Class, requests the following

10   relief:

11                (a)   An order certifying the Class and appointing Plaintiff as

12                      Representative of the Class;

13                (b)   An order certifying the undersigned counsel as Class Counsel;

14                (c)   An order requiring Pepper Tree, Inc. dba WildWater Express

15                      Carwash, at its own cost, to notify all Class Members of the

16                      unlawful and deceptive conduct herein;

17                (d)   An order requiring Pepper Tree, Inc. dba WildWater Express

18                      Carwash to engage in corrective advertising regarding the

19                      conduct discussed above and prohibiting Defendant from

20                      engaging in the practices alleged herein in the future;

21                (e)   Actual damages suffered by Plaintiff and Class Members as

22                      applicable or full restitution of all funds acquired from Plaintiff

23                      and Class Members from the sale of misbranded Class Products

24                      during the relevant class period;

25                (f)   Punitive damages, as allowable, in an amount determined by

26                      the Court or jury;

27                (g)   Any and all statutory enhanced damages;

28

(h)     All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i)     Injunctive relief;

(j)     Pre- and post-judgment interest; and

(k)     All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

Dated:  November 30, 2017          Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC

By: s/Todd M. Friedman
TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff Twinkle Tuttle